DELMARVA POULTRY CORPORATION, a Delaware corporation, Plaintiff Below, Appellant, v. SHOWELL POULTRY CORPORATION, a Delaware corporation, Defendant Below, Appellee.

(*March* 27, 1962.)

SOUTHERLAND, Chief Justice; WOLCOTT, Justice, and SHORT, Vice Chancellor, sitting.

*S. Samuel Arsht* and *Harvey S. Kronfeld* (of Morris, Nichols, Arsht and Tunnell) for appellant.

*Robert W. Tunnell* (of Tunnell and Raysor) for appellee.

Supreme Court of the State of Delaware, No. 32, 1961.

WOLCOTT, J.:

This is an action brought by Delmarva Poultry Corporation (hereafter Delmarva) against Showell Poultry Corporation (hereafter Showell) to recover rent and expenses of operation for the use by Showell for the transporting of live chickens of certain tractor-trailers and batteries owned by Delmarva. After trial without a jury the Superior Court entered judgment for Delmarva in the amount of $4,775.82 representing reasonable rental for the equipment for the period June 23 to July 10, 1955 in the amount of $5,154.40, plus cost of operations in the amount of $2,121.42 incurred by Delmarva prior to June 23, less $2,500.00 paid by Showell on June 30, 1955. Delmarva was denied any recovery for the period prior to June 23. Delmarva appeals.

In October, 1953 Delmarva abandoned the business of hauling, processing and selling poultry and thereafter confined its business to leasing its processing plants and its tractor-trailers and batteries to other poultry processors. Showell, since 1953, has been engaged in the business of hauling, processing and selling poultry.

By the spring of 1955 the poultry industry generally, in order to haul poultry more efficiently, had changed from haul-

age in coops to haulage in batteries. The precise difference between the two methods is immaterial to a decision in this lawsuit. For our purposes it is sufficient to state that about this time Showell decided to switch from a coop to a battery operation.

In March or April of 1955 a public sale of the assets of a bankrupt poultry processing plant was held in Frankford, Delaware, at which Delmarva purchased the tractor-trailers, the subsequent use of which by Showell brought about this lawsuit.

While the facts as to what transpired in April, 1955 between one Landes, representing Delmarva, and one Guerrieri, representing Showell, are in hopeless dispute, it is the fact that pursuant to some agreement made by them Showell used Delmarva's equipment for the period April 17 to July 10, 1955.

Delmarva's version of the agreement is that Showell for the use of the equipment was to pay Delmarva a rental of 70¢ per hundred weight of live poultry hauled by Showell in the equipment, plus the cost of gasoline, oil, repairs, etc., with an option, never exercised by Showell, to pay instead a flat rental of $95.00 per tractor-trailer per week. At the time of the agreement Delmarva says that it was understood that Showell would need this equipment only until such time as it received delivery of new tractor-trailers which it had ordered. About one week later, according to Delmarva's version, Delmarva agreed to furnish Showell batteries at a rental of $3.00 per battery per week. Pursuant to this, Delmarva furnished Showell 182 batteries throughout the period in question.

On the other hand Showell's version of the agreement is that the equipment was loaned by Delmarva to Showell with the understanding that Showell was to pay the cost of gasoline, oil, repairs, etc. Showell contends that this arrange-

ment conferred a benefit on Delmarva because the tractor-trailers, which apparently had not been operated for some time prior to their purchase by Delmarva, were repaired and put in operating condition at Showell's expense.

Following the commencement of the use by Showell of Delmarva's equipment, Delmarva rendered bills to Showell for truck expenses which did not include any charge for truck rental but included charges for gasoline, oil, parts, supplies and labor. Such bills were rendered on June 1 for $2,242.09; on June 9 for $972.67, and on June 14 for $917.59. On June 22 Delmarva rendered a bill to Showell which, for the first time, indicated a charge for truck rental with no amount specified and also included charges for supplies, etc., in the amount of $1,028.53. This bill was followed on June 23 with a bill for truck rental to that date in the total amount of $7,200.00. On June 28 a bill for supplies in the amount of $1,092.89 with truck rental included but no amount stated was rendered, and on July 6 a bill in the amount of $666.01 for supplies alone was rendered.

The trial judge held that it seemed unlikely that Delmarva would have loaned its equipment without any charge except for fuel and repairs, but that it seemed equally unlikely that Showell would have agreed to pay 70¢ per hundred weight and at the same time pay for fuel, repairs and the labor costs for manning the equipment, since that rate ordinarily obligated the owner of the equipment to pay these charges. It was therefore held that Delmarva had failed to sustain the burden of proof cast upon it, and that, hence, no recovery would be permitted upon the express contract.

We do not review in detail the evidence which led the trial judge to this conclusion. We have read it and are satisfied that the ruling was correct that Delmarva did not establish by the preponderance of the evidence the express contract sued upon.

As a matter of fact, Delmarva in this appeal does not seriously attack the soundness of this ruling. The burden of this appeal is that the trial judge committed error when he allowed recovery on a *quantum meruit* basis of the reasonable rental of the equipment for the period following June 23, but denied any such recovery for the period preceding that date. This date was selected as the division by the trial judge because of his finding that as of that date Showell was aware that Delmarva was claiming rent for its equipment. It will be remembered that on the bill of June 22 for the first time a charge for truck rental appeared.

The trial judge then determined from the evidence the reasonable rental value of 65¢ per hundred weight from which he deducted 25¢ representing the cost to Showell of the drivers and crew supplied by it, and computed the award accordingly. We do not understand Delmarva to take exception to the rental value thus established. The complaint of Delmarva is that it has been allowed nothing for rental for the period prior to June 23.

In order for Delmarva to prevail upon this issue, it must establish affirmatively that Showell used its equipment under conditions which, if not expressly agreed to by the parties, must nevertheless imply in law a promise by it to pay the reasonable rental value for the use of the equipment. 12 *Am. Jur.*, Contracts, § 5. The trial judge expressly found that Delmarva had failed to meet this requirement. In his view, therefore, prior to June 23 the use of the equipment was to be had upon payment of the expenses of operation, something not customarily paid by a user expecting to pay rent for the use of the equipment.

We do not have the benefit of detailed findings of fact made by the trial judge. We think, however, that his short statement of findings requires the conclusion that he rejected Delmarva's contention that it was to receive rent as not supported by the evidence. Necessarily, therefore, he must have ac-

cepted Showell's version that it was to have the use of the equipment for the payment of the expenses. In any event, the fact that admittedly Showell paid for items not customarily payable by the lessee supports the conclusion that its version is the more likely of the two. We think we must accept the ruling on this phase of the case.

Delmarva argues that the law of quasi-contracts requires that a *quantum meruit* award be made for the period prior to June 23. Authorities are cited for the proposition that an obligation to pay rent is implied from the use by one person of the property of another. It serves no purpose to review these authorities in detail. Suffice it to say that all of them recognize the exception that where the property is loaned as a gratuity or without expectation of the payment of rent, no promise to pay may be inferred from its use.

We think this case by reason of the trial judge's holding falls within the exception. Having found that Delmarva failed to prove an express promise for the payment of rent, and having denied any recovery on a *quantum meruit* basis for the earlier period, it follows, we think, that the trial judge found the fact to be that no rental *per se* was expected for Showell's use of the equipment. In other words, the trial judge accepted Showell's version of the transaction prior to June 23 on which date Delmarva's demand for rent changed the entire situation.

Further support for this conclusion is found in the determination of the rental value following June 23. It is obvious that thereafter Showell's obligation to Delmarva is computed upon a basis entirely different from what had gone before. Prior to June 23 Showell paid all expenses of gasoline, oil, repairs, parts and labor required to operate the equipment. Following June 23 Showell's obligation is to pay the reasonable rental value, less certain labor charges, while Delmarva is required to assume the obligation of the expenses of maintenance and operation. This came about because it was found

as a fact that after June 23 the parties understood that rent was expected to be paid. This finding impliedly at least supports the conclusion the payment of these particular items by Showell prior to June 23 negates any implication that in addition Showell was to pay rent.

One further argument made by Delmarva must be noticed. It is argued that if Delmarva's equipment was loaned to Showell rent free, it was the giving away of corporate property by an officer of Delmarva and is therefore void absent approval of all of Delmarva's stockholders. Delmarva cites *Kerbs v. California Eastern Airways, Inc.*, 33 *Del. Ch.* 174, 91 *A.* 2d 62, 34 *A. L. R.* 2d 839, and *Frankel v. Donovan*, 35 *Del. Ch.* 433, 120 *A.* 2d 311.

The argument, of course, ignores the suggestion that Delmarva received consideration for its loan of its equipment by having the tractor-trailers repaired and serviced at Showell's expense. But a further answer exists. Whatever might be the result in a suit by Delmarva's stockholders against its officer who made the arrangement with Showell, assuming that it amounted to giving away corporate assets, it can hardly change Delmarva's relationship with Showell. Assuming that this arrangement was *ultra vires*, the contract having been fully executed, no action could be maintained against Showell to recover for Delmarva what it has parted with. 7 *Fletcher Cyclopedia Corporation* (Perm. Ed.), § 3497.

For the foregoing reasons, the judgment below is affirmed.